IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JOSEPH SHAW, and PORTER & SHAW INVESTMENTS, LLC, <br><br> Defendants. | 4:22-CV-3139 <br><br> MEMORANDUM AND ORDER |

The plaintiff, Joe Hand Promotions, Inc., sued the defendants, Joseph Shaw and Porter & Shaw Investments, LLC, for broadcasting a boxing match at a bar in Lincoln, Nebraska, without permission. This matter is before the Court on the plaintiff's motion for summary judgment (filing 18), to which the defendants did not respond. The motion will be granted.

I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* at 1042.

A party's failure to file an opposing brief or statement of undisputed material facts alone is not considered confession of a motion, though the nonmoving party is precluded from contesting the moving party's statement of facts. NECivR 56.1, 7.1(b)(1)(C); *see also Paskert v. Kemna-ASA Auto Plaza, 950 F.3d 535, 540 (8th Cir. 2020)* (quoting *Stacher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009)*). The nonmoving party's failure to respond "does not compel resolution" in favor of the moving party; rather, summary judgment shall be entered only if appropriate. *United States v. 9638 Chicago Heights, 27 F.3d 327, 329 n.1 (8th Cir. 1994)* (quoting Fed. R. Civ. P. 56(e)(3)).

## II. BACKGROUND

The plaintiff is a company that distributes and licenses sports and entertainment programming. As relevant here, the plaintiff had the exclusive authority to exhibit and sublicense a pay-per-view boxing broadcast to commercial establishments in Nebraska. Filing 18-1 at 1-2. To obtain a license to show the broadcast, businesses had to pay the plaintiff a fee based on the fire code occupancy of the establishment. *See* filing 18-5 at 2. For an establishment with an occupancy between 1 and 100, the applicable rate was $1,475. Filing 18-5 at 2.

The defendants own and operate a bar in Lincoln with an estimated occupancy of, at most, 90. *See* filing 18-1 at 1-2. The defendants did not have an agreement with the plaintiff to show the boxing match at issue. But at their bar, the defendants showed the fight on seven televisions to around three patrons. Filing 18-1 at 2. The defendants ordered and obtained the fight through a residential satellite television account registered to the bar. Filing 18-1 at 3. The defendants collected money from the bar patrons to view the fight. Filing 18-1 at 3. The defendants advertised that the fight would be shown at their establishment by placing a sign outside the bar, and by making several posts on their social media page. Filing 18-7 at 2, 9.

### III. DISCUSSION

The plaintiff asserts that the defendants' unauthorized broadcast of the boxing match violated the Federal Communications Act of 1934, 47 U.S.C. § 605, which prohibits (inter alia) piracy of television signals via satellite. Filing 18-2 at 1; *see also J & J Sports Prod., Inc. v. Palomares*, No. 8:18-cv-185, 2018 WL 5045190, at *2 (D. Neb. Oct. 15, 2018) (collecting cases); *Joe Hand Promotions, Inc. v. Peterson*, No. 8:12-cv-241, 2014 WL 824119, at *3 (D. Neb. Mar. 3, 2014). The undisputed facts indicate that the defendants showed the boxing match through satellite television in their establishment without authorization or approval from the plaintiff, and the defendants personally supervised, controlled, and financially benefited from the establishment. *See* filing 18-1. This is sufficient to prove the defendants violated § 605. *Palomares*, 2018 WL 5045190, at *2.

*Damages*

A party aggrieved by violations of § 605 may recover actual damages or statutory damages. The plaintiff has elected to recover statutory damages. For

3

each violation of § 605(a), an aggrieved party may recover "a sum of not less than $1,000 or more than $10,000, as the court considers just." § 605(e)(3)(C)(i)(II). Although various factors inform the Court's determination of a "just" amount of damages, the plaintiff has the burden to show that an award of damages greater than the statutory minimum is warranted. *DIRECTV, Inc. v. Walsh*, 540 F. Supp. 2d 553, 560 (M.D. Pa. 2008).

The plaintiff requests $2,950 in statutory damages. Filing 18-2 at 8. The plaintiff lost $1,475 by the defendants' failure to pay the requisite licensing fee, and it argues that a larger figure, twice the fee, is appropriate under § 605(e)(3)(C)(i)(II). According to the plaintiff, its damages "are not limited to lost licensing fees," and it "should receive additional compensation" because it "has been deprived of the value, benefits[,] and profits derived from the unauthorized broadcast . . . as well as the value of business investment, business opportunities[,] and goodwill." Filing 18-2 at 9 (internal quotations omitted).

But the Court is not convinced that damages beyond the licensing fee are appropriate. Rather, the amount that the defendants should have paid for a sublicensing agreement is the proper amount of damages. *See Palomares*, 2018 WL 5045190, at *3 (quoting *Joe Hand Promo., Inc. v. Moore*, No. 4:15-cv-4082, 2017 WL 741009, at *2 (W.D. Ark. Feb. 24, 2017)). The plaintiff could also recover any cover charge that the defendants charged for the patrons who viewed the broadcast. *See id*. However, the undisputed facts indicate that only three patrons viewed the unauthorized broadcast, and while the defendants charged some fee to enter, there is no evidence of the *amount* charged. The plaintiff has also failed to provide any evidence or explanation of other harm it suffered. An award of the unpaid licensing fee, $1,475, is the appropriate award under § 605(e)(3)(C)(i). *See Palomares*, 2018 WL 5045190, at *3.

The plaintiff also requests enhanced statutory damages. Under § 605(e)(3)(C)(ii), if a court finds that a violation of § 605 was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages" not to exceed $100,000 per violation. Here, the defendants advertised that they would broadcast the fight in an obvious effort to induce customers to come to their bar. They used a residential streaming account to stream the broadcast at a commercial establishment. The Court finds that the defendants violated the law for financial gain and the commission was willful. *See Palomares*, 2018 WL 5045190, at *3.

The purpose of enhanced damages is to punish violations and deter future piracy. *E.g., Palomares*, 2018 WL 5045190, at *4 (quoting *Moore*, 2017 WL 741009, at *3). In determining an appropriate damages award, courts consider whether there have been repeated violations, whether the defendant advertised the event, whether the defendant charged a cover, the amount of the defendant's gain, and other similar factors. *Id.* (quoting *Joe Hand Prods., Inc. v. Feil*, No. 12-cv-1603, 2013 WL 2936389, at *2 (D. Minn. June 14, 2013)).

According to the undisputed facts, the defendants advertised the event, including on a sandwich board outside their establishment and through several posts on social media. *See* filing 18-7 at 2, 9; filing 18-9 at 2. The defendants also charged a cover to view the broadcast, but there is no evidence of how much the defendants gained. *See* filing 18-1 at 3. And there were only three people present when the defendants showed the broadcast, though the broadcast was on seven television screens. Filing 18-1 at 2.

Based on the advertisements and the act of displaying the fight on seven television screens, the defendants clearly *wanted* people to show up to watch the fight. The damages award should reflect that, even if the defendants

5

weren't particularly successful in enticing patrons to come to their bar to watch an illegal broadcast. Based on the relevant considerations, the Court finds that an award of $1,500 is appropriate to fulfill the purposes of the statute and deter future wrongful conduct. *See* § 605(e)(3)(C)(ii); *Moore,* 2017 WL 741009, at *3; *Feil,* 2013 WL 2936389, at *2.

The plaintiff has also indicated it intends to file a post-judgment motion requesting attorneys fees. Under the statute, the Court shall direct the recovery of full costs, including awarding reasonable attorneys' fees, to a prevailing aggrieved party. § 605(e)(3)(B)(iii). The Court will award attorneys' fees upon an appropriate motion from the plaintiff that complies with Fed. R. Civ. P. 54(d)(2) and NECivR 54.3.

Accordingly,

IT IS ORDERED:

1. The plaintiff's motion for summary judgment (filing 18) is granted.

2. A separate judgment will be entered against the defendants and in favor of the plaintiff in the amount of $2,975.00.

Dated this 17th day of September, 2024.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
Senior United States District Judge